UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBRA LYNN LEAHY,<br>501 Front Street,<br>Norfolk, Virginia 23510,<br><br>     and<br><br>PEOPLE FOR THE ETHICAL<br>     TREATMENT OF ANIMALS,<br>501 Front Street,<br>Norfolk, Virginia 23510,<br><br>       Plaintiffs,<br><br>   v.<br><br>THE UNITED STATES DEPARTMENT OF<br>AGRICULTURE,<br>1400 Independence Avenue, S.W.<br>Washington, D.C. 20250,<br><br>W. RON DEHAVEN,<br>Administrator, Animal Plant and Health<br>     Inspection Service,<br>United States Department of Agriculture<br>1400 Independence Ave., S.W.,<br>Washington, D.C. 20250,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civ. No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**VERIFIED COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This is a case under the Administrative Procedure Act, 5 U.S.C. § 706(2),

challenging a decision by the United States Department of Agriculture ("USDA") to approve the

imminent placement of three severely mistreated and tuberculosis-exposed elephants, who are

currently in the possession of the Hawthorn Corporation, with an entity entitled the "Endangered Ark Foundation" which is run by the Carson & Barnes circus – a notorious abuser of Asian elephants. In fact, a few years ago, the head of the Endangered Ark Foundation, who is also one of the chief elephant "trainers" for Carson & Barnes, was videotaped brutally abusing elephants with an electric prod and bull hook – a heavy club with a sharp point on one end, in flagrant violation of the Animal Welfare Act (AWA), 7 U.S.C. § 2141 *et seq.*, and the implementing regulations to that statute. See Exhibits A and B.   More recently, the USDA itself had determined that neither Carson & Barnes nor the Endangered Ark Foundation is a suitable location for the placement of the three elephants, because Carson & Barnes has "not demonstrated the ability to comply with the [AWA] and Regulations."   Accordingly, the USDA's abrupt decision to nevertheless allow the placement of the elephants with Carson & Barnes, especially when there is an elephant sanctuary that the agency has designated as an appropriate "donee" for these elephants that is willing to take and care for these animals, is arbitrary and capricious and an abuse of discretion. On information and belief, the transfer of the animals is to take place some time during the next few days.

## Jurisdiction

2.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## Parties

3.      Plaintiff Debra Leahy is the Director of Captive Animal and Entertainment Issues for People for the Ethical Treatment of Animals ("PETA"). Ms. Leahy loves animals and has devoted her professional life to advocating better conditions for animals, including those used in circuses and zoos. For many years, Ms. Leahy has followed the status of the Hawthorn

2

elephants, and she has been in the forefront of advocating their protection, rescue, and placement with a sanctuary. In fact, Ms. Leahy has had many discussions with representatives of the USDA and Hawthorn's owner, John Cuneo, about these elephants. She has also had the pleasure of visiting the elephants and getting to know them personally. As a result, she has grown extremely fond of them, and has formed a strong, personal attachment to these particular animals. In fact, recently Mr. Cuneo invited Ms. Leahy to come to his facility to again visit these elephants. Ms. Leahy intends to visit the animals as often as she is able, although doing so, when the animals continue to be maintained by entities that mistreat them and fail to provide them with the veterinary and other care they so desperately need, causes her great aesthetic and emotional harm.

4.     The USDA's recent decision to reverse its previous determination that Carson & Barnes is not an acceptable location for the placement of these animals, and instead to approve the placement of the animals at a Carson & Barnes' facility, injures Ms. Leahy's aesthetic and emotional interests in these particular animals because it means either that she will never be able to see the animals again or that, when she sees them, she will suffer aesthetic harm by viewing animals whose demeanor and spirit have been further impaired because they have been removed from their surrogate family and are living in an environment that is abusive and unhealthy for them. Therefore, to avoid such aesthetic injury, Ms. Leahy will have to make the choice to refrain from visiting these animals with whom she has formed a close personal bond.

5.     If these animals were relocated to a sanctuary or other place that is in full compliance with the Animal Welfare Act and does not beat its elephants with electric prods and bull hooks, keep them chained all day long, or deny them veterinary care, Ms. Leahy would visit them as often as possible.

3

6.      Plaintiff People for the Ethical Treatment of Animals ("PETA") is a nonprofit animal rights organization with more than 850,000 members and supporters. It brings this action on its own behalf and on behalf of its members. PETA spends substantial resources each year advocating on behalf of animals used for exhibition and entertainment, and it has sent numerous submissions to the federal government, including submissions to the USDA concerning the Hawthorn elephants, as well as Carson & Barnes' mistreatment of elephants. PETA has already spent considerable resources on monitoring the status of the Hawthorn elephants, advocating enforcement action against the Hawthorn Corporation under the Animal Welfare Act because of the way it has mistreated these elephants, and advocating placement of these animals in a sanctuary that can meet the needs of these particular animals. PETA maintains an active website for its members and the public in general, and it uses its website, publications, and the media to disseminate information to its members and the public about government actions affecting animals, including captive elephants.

7.      Defendants' unlawful action in approving the transfer of the Hawthorn elephants to Carson & Barnes injures PETA because it will mean that PETA will have to continue spending resources on monitoring the treatment of these animals, reporting its findings to the USDA, and attempting to convince the USDA to bring appropriate enforcement actions under the Animal Welfare Act to protect these animals, and PETA will also have to spend considerable resources on continuing to keep its members informed about the welfare of these animals. Had the USDA not approved the placement of the animals with an entity that is a frequent violator of the Animal Welfare Act, and the animals instead were placed with a sanctuary that is in full compliance with that statute, PETA would not have to continue to spend such resources on

4

monitoring the well being of these animals and reporting their status to their members.

8.    Defendant U.S. Department of Agriculture is the federal agency responsible for making the decision to approve the placement of the Hawthorn elephants at Carson & Barnes, after previously determining that this was not an appropriate place for the animals because it has "not demonstrated the ability to comply with the [AWA] and Regulations."

9.    Defendant W. Ron DeHaven is the Administrator of the USDA's Animal Plant and Health Inspection Service, which was responsible for making the decision to approve placement of the animals at the Carson & Barnes facility.

## Facts Giving Rise To Plaintiffs' Claims

10.    The Animal Welfare Act ("AWA"), 7 U.S.C. § 2131 et seq. and the regulations implementing that statute establish conditions under which animals may be used for exhibition and entertainment. The AWA is administered by the USDA.

11.    The AWA regulations state that "[p]hysical abuse shall not be used to train, work, or otherwise handle animals," and that "[h]andling of all animals shall be done . . . in a manner that does not cause trauma, . . . behavioral stress, physical harm, or unnecessary discomfort." 9 C.F.R. § 2.131(a), (b).

12.    The USDA has also promulgated regulations requiring that all exhibitors "establish and maintain programs of adequate veterinary care," that include, *inter alia*, "[t]he availability of appropriate methods to prevent, control, diagnose, and treat diseases." 9 C.F.R. § 2.40(b)(2) (2004). On April 1, 1998, to clarify this mandate, and in response to the diagnoses of several cases of tuberculosis in captive elephants owned by AWA-licensed exhibitors, the USDA published a policy statement notifying exhibitors that, in order to comply with 9 C.F.R. §

5

2.40(b)(2), they "must" follow guidelines for the control of tuberculosis in elephants established by the National Tuberculosis Working Group for Zoo and Wildlife Species. Those Guidelines provide that an elephant who has tested negative for tuberculosis, but has been exposed to a TB-positive animal in the past 12 months must not travel or have direct contact with the public or non-exposed elephants until the elephant has received at least 60 doses of anti-TB drugs within 90 days.

13.     All three of the Hawthorn elephants at issue here have been exposed within the last year to elephants who had tuberculosis.

14.     John F. Cuneo is the owner and chief executive officer of the Hawthorn Corporation, which is an Illinois Corporation that loans and leases animals, including elephants, to circuses and other entities for exhibition and entertainment. It is subject to the AWA and its implementing regulations. It currently has possession of 12 elephants.

15.     Elephants weigh between 6,000 - 8,000 pounds, and live to be approximately 65 years old or older. In the wild, they walk many miles each day, and forage for food for approximately 18 hours each day.

16.     Elephants form strong social bonds with their family unit; female elephants remain for life with their families, and elephants suffer great trauma if they are removed from their families.

17.     On April 9, 2003, the USDA filed charges against John F. Cuneo, the Hawthorn Corporation, several employees, and others for violating the Animal Welfare Act with regard to their mistreatment of the Hawthorn elephants. The complaint alleged 47 violations of the minimal standards of the Animal Welfare Act and requested an order requiring Mr. Cuneo and

6

the Hawthorn Corporation to cease and desist from violating the AWA and the regulations and standards issued thereunder, assessing civil penalties against them, and revoking Mr. Cuneo's and the Hawthorn Corporation's license under the AWA.

18.    On March 13, 2004, the USDA entered into a Consent Decision and Order with Mr. Cuneo and the Hawthorn Corporation. Exhibit C. Pursuant to that Decision and Order, Mr. Cuneo and Hawthorn admitted that Hawthorn has "failed to establish and maintain programs of adequate veterinary care" for elephants, that it had also failed to handle elephants "in a manner that did not cause behavioral stress" to the elephants, failed to handle elephants in a manner that "did not cause physical harm" to the animals, and "failed to establish and maintain programs of adequate veterinary care" for the elephants.

19.    Pursuant to the Decision and Order, Hawthorn was required to relinquish possession of all of the elephants in its possession, and the USDA was to determine, prior to August 15, 2004, which facilities had "demonstrated the ability to provide proper care" for the Hawthorn elephants "in accordance with the [AWA] and the Regulations," and hence should be "approved" as suitable placement facilities for the animals. Exhibit C, ¶ 3.

20.    Pursuant to the Decision and Order, the elephants are to be donated – free of charge – to those entities that were approved by the USDA prior to August 15, 2004, to accept the animals. Until the elephants are placed with adequate facilities approved by the USDA, Hawthorn is required to provide each of the elephants "humane care (including veterinary care), husbandry, and housing."

21.    On April 30, 2004, the USDA's representative informed Mr. Cuneo that the USDA "does not approve . . . Endangered Ark Foundation (Carson & Barnes Circus)" as a

7

suitable place for any of the elephants. Exhibit D.

22.    On May 21, 2004 the USDA's representative again reiterated certain facilities –
including the "Endangered Ark Foundation (Carson & Barnes Circus)" – "were unable to
demonstrate the ability to provide proper care for the elephants in accordance with the Act and
Regulations." Exhibit E. The USDA also stated its determination that it is a "very real
possibility that the Elephant Sanctuary and PAWS would be the only facilities that met the
requirements of the Consent Decision and Order . . .." Id.

23.    On July 19, 2004, the USDA's representative again informed Mr. Cuneo that the
agency could not approve Carson & Barnes as an adequate facility for placement of the
elephants, because the "Endangered Ark Foundation (Carson & Barnes Circus) has not
demonstrated the ability to comply with the [AWA] and Regulations . . .." Exhibit F.

24.    By August 15, 2004, the USDA had not approved Carson & Barnes as a suitable
facility for placement of the elephants. On the contrary, the agency has repeatedly refused to
approve Carson & Barnes because it had failed to "demonstrate the ability to comply" with the
AWA and the Act's implementing regulations. See Exhibits D-F.

25.    In fact, Carson and Barnes has a well documented record of mistreating elephants:

•    In the winter of 2002, Plaintiff Leahy submitted to the USDA a video tape
of an elephant training session conducted at Carson & Barnes. This tape
was taken by an undercover investigator on March 5, 1999. The video
tape shows Carson & Barnes' Animal Care Director, Tim Frisco, providing
instruction to elephant trainers on how to train elephants. It shows Mr.
Frisco yelling, cursing, and beating an elephant until she screams, and Mr.
Frisco instructing the new trainers to "hurt" the elephants and "make 'em
scream," because "when you hear that screaming then you know you got
their attention." See Exhibits A and B.

8

- In recent years, Carson & Barnes has been cited by the USDA for multiple violations of the Animal Welfare Act and the statute's implementing regulations – e.g., on August 9, 2002, a Carson & Barnes circus trailer carrying two elephants overturned landing on its side on Route 9 in Rhinebeck, New York;  on June 27, 2003, Carson & Barnes circus trailer carrying two elephants overturned injuring Isla and Opal near Max, North Dakota.  The elephants had to be removed from the trailer by the fire and rescue team as the vehicle had been totaled.  The driver was cited as failing to use proper care.  Carson & Barnes circus had been cited at least eight previous times, from 1995-2001, for failing to maintain its animal transport trailers.

- On June 21, 2002, plaintiff Debra Leahy witnessed Joe Frisco Jr., Tim Frisco's brother, forcefully hook the Carson & Barnes elephants during a performance.  Ms. Leahy reported this incident to the USDA.

- In 2004, a five-year-old elephant died while in the care of Carson & Barnes.

- On July 8, 2004, a Saint Helens Animal Control officer  in Oregon discovered that Carson & Barnes vet, Dr. Eudy, had signed the elephants' health certificates "without inspecting the elephants."  The Animal Care officer also noted evidence that elephants had been struck with bull hooks, and that elephants were swaying "which is indicative of distress."  All of these findings were reported to the USDA.

26.     On the other hand, by August 15, 2004, the USDA had approved The Elephant Sanctuary in Hohenwald, Tennessee – a world renowned sanctuary for captive elephants – as a suitable location for the elephants, along with several other entities.

27.     Because all of the Hawthorn elephants have been exposed to tuberculosis, it is important and necessary that they be maintained in a separate facility, apart from other animals, until it can be assured that they are not contagious.

28.     One of the many reasons The Elephant Sanctuary is a suitable location for placement of the animals is that, by September, 2005, it will have completed the construction of a special barn that can house the tuberculosis-exposed elephants without having to commingle

9

them with other elephants who have not been exposed to tuberculosis. In addition, the Elephant Sanctuary will be able to give refuge to almost all of the Hawthorn elephants, thereby keeping this surrogate family together.

29.    Mr. Cuneo himself recently stated in a sworn declaration that "[e]lephants are highly social animals with well-developed relationships," that "many" of the Hawthorn elephants "have been together for well over a decade," and that"[a]s such, I consider it important to keep these elephants together as a herd to the maximum extent possible." See Exhibit G, ¶ 12.

30.    On information and belief, the USDA recently informed Mr. Cuneo that it has decided that, despite its previous determination that Carson & Barnes is not a suitable location for the Hawthorn elephants, the agency has now "approved" sending at least three of the elephants – Ronnie, Gypsy, and Joy – to a Carson & Barnes' facility called the "Endangered Ark Foundation."

31.    Since 1993, Carson & Barnes has operated the Endangered Ark Foundation, which is a breeding compound located in Hugo, Oklahoma. Carson & Barnes is not breeding elephants to be released into the wild; rather, it is breeding them solely for use in its circus or other commercial enterprises.

32.    In August of 2003, Tim Frisco – the same individual who can be seen on video tape beating and terrorizing elephants, Exhibits A and B – was the Manager of the Endangered Ark Foundation's elephant breeding compound in Hugo. On information and belief Mr. Frisco remains the Manager, or other high level official at this facility.

33.    On information and belief, the three Hawthorn elephants are to be transferred to Carson & Barnes some time during this week – i.e., **the week of June 6, 2005**.

10

34.    On information and belief, there are currently other facilities, including the

Elephant Sanctuary, that were approved by the USDA prior to August 15, 2004, that are willing

to provide sanctuary to these elephants and to keep them with their other family members.

## PLAINTIFFS' CLAIMS FOR RELIEF

35.    By making the decision to allow John Cuneo to transfer the Hawthorn elephants

to Carson & Barnes, when the USDA has already decided that this entity has "not demonstrated

the ability to comply" with the AWA and that statute's implementing regulations, and in the face

of voluminous evidence that Carson & Barnes, and, in particular, the head of the Endangered Ark

Foundation (to which the elephants are being sent) uses violence to train and control elephants,

the USDA has acted in an arbitrary and capricious manner and abused its discretion, within the

meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2). The agency's actions injure

plaintiffs in the manner specified in paragraphs 3-7 of this Complaint.

36.    By approving the transfer of the Hawthorn elephants to Carson & Barnes, when

there are other facilities that the USDA has consistently approved as appropriate homes for the

elephants, the USDA has acted in an arbitrary and capricious manner and abused its discretion,

within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2). The agency's

actions injure plaintiffs in the manner specified in paragraphs 3-7 of this Complaint.

**WHEREFORE**, plaintiffs pray that this Court:

(1)    Declare that the defendants have acted arbitrary and capriciously and abused their

discretion in making the decision to allow John Cuneo to transfer the Hawthorn elephants to

Carson & Barnes and the Endangered Ark Foundation;

11

(2)    Temporarily and permanently enjoin the effectiveness of the USDA's decision to approve Carson & Barnes and the Endangered Ark as a donee of the Hawthorn elephants;

(3)    Award plaintiffs' their reasonable attorneys' fees and costs; and

(4)    Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Tanya M. Sanerib
(D.C. Bar No. 473506)

Katherine A. Meyer
(D.C. Bar No. 244301)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20009
(202) 588-5206

Date:    June 8, 2005

## **VERIFICATION**

I verify under penalty of perjury, 28 U.S.C. § 1746, that the foregoing facts giving rise to plaintiffs' claims for relief are true and accurate to the best of my knowledge.

_Debra Leahy_

Debra  Leahy

Date:   June 7, 2005

13