UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBRA LYNN LEAHY, *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) Civ. No. |
| v. | ) |
| | ) |
| THE UNITED STATES DEPARTMENT OF | ) |
| AGRICULTURE, et al. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR A TEMPORARY RESTRAINING ORDER**

**Introduction**

This memorandum is submitted in support of plaintiffs' request for a temporary restraining order to set aside a decision by the United States Department of Agriculture (USDA) to allow the transfer of three elephants – Ronnie, Gypsy, and Joy – from the Hawthorn Corporation in Illinois to a facility operated by the Carson & Barnes Circus – a notorious abuser of elephants and repeat violator of the Animal Welfare Act. Indeed, according to the USDA's own repeated findings, Carson & Barnes is "unable to demonstrate the ability to provide care for the elephants in accordance with the [Animal Welfare] Act" and the relevant regulations. See Letter from USDA to Hawthorn Corp. (May 21, 2004) (Exhibit E to the Verified Complaint); see also Letter from USDA to Hawthorn Corp. (July 19, 2004) (Exhibit F ) (explaining that USDA could not approve Carson & Barnes as an adequate facility for these elephants because it "has not demonstrated the ability to comply with the [AWA] and Regulations;" Letter from USDA to

Hawthorn Corp. (April 30, 2004) (Exhibit D to the Complaint) (stating that the USDA "does not approve . . . Endangered Ark Foundation (Carson & Barnes Circus)" as a suitable place for any of the elephants). Nevertheless, the agency has now suddenly decided to allow the elephants to be given to Carson & Barnes.

The agency's complete reversal of its previous determination concerning the suitability of this facility is particularly troubling in light of the fact that another entity, the Elephant Sanctuary – a world renowned elephant sanctuary in Hohenwald Tennessee and an entity that the USDA has found is in full compliance with the Animal Welfare Act – is willing to provide a home for these three elephants, and to keep them with their other family members.

Plaintiffs found out on Monday, June 6, that the Hawthorn Corporation plans on transferring these three elephants to Carson & Barnes **before the end of this week**. Accordingly, plaintiffs have no choice but to request a temporary restraining order to maintain the status quo. In support of their motion, plaintiffs rely on, and hereby incorporate by reference, the facts set out in their Verified Complaint which is also being filed today and is attached for the Court's convenience, as well as the accompanying Exhibits and the Declarations of Mary Beth Sweetland (Plf. Exh. 1), Gay Bradshaw (Plf. Exh. 2), and Pat Derby (Plf. Exh. 3). As demonstrated below, plaintiffs are entitled to the requested injunction.[1]

## BACKGROUND

As explained in plaintiffs' Verified Complaint, the Hawthorn elephants at issue in this case have already lived a life of inhumane and unhealthy treatment at the hands of their current

---

[1] All of the Exhibits have been attached to the Verified Complaint, which is attached to this memorandum.

owner – the Hawthorn Corporation, which leases and loans elephants for entertainment and exhibition to other commercial enterprises. Verified Complaint ¶¶ 13, 17-18. Indeed, Mr. Cuneo, who heads the Hawthorn Corp., has admitted that Hawthorn has "failed to establish and maintain programs of adequate veterinary care" for its elephants, that it had also failed to handle elephants "in a manner that did not cause behavioral stress" to the elephants, failed to handle elephants in a manner that "did not cause physical harm" to the animals, and "failed to establish and maintain programs of adequate veterinary care" for the elephants. See Consent Decision, Exhibit C, at 1-2. Accordingly, the USDA has extracted an obligation on the part of the Hawthorn Corporation to relinquish possession of the animals, and the agency has imposed upon itself the duty to "approve" placement of the animals with a facility that the agency has determined has "demonstrated the ability to provide proper care" for the Hawthorn elephants "in accordance with the [Animal Welfare Act] and the Regulations." Id.

As plaintiffs also explain, the agency has found – on three separate occasions – that the Hawthorn Corporation does not meet these criteria, i.e., that it has not demonstrated the ability to provide proper care for these animals in accordance with the Animal Welfare Act or the applicable regulations. Thus, on April 30, 2004, the USDA informed Mr. Cuneo that the USDA "does not approve . . . Endangered Ark Foundation (Carson & Barnes Circus)" as a suitable place for any of the elephants. Exhibit D. On May 21, 2004 the USDA again reiterated that the "Endangered Ark Foundation (Carson & Barnes Circus)" was "unable to demonstrate the ability to provide proper care for the elephants in accordance with the Act and Regulations." Exhibit E. And, on July 19, 2004, the USDA again informed Mr. Cuneo that the agency could not approve Carson & Barnes as an adequate facility for placement of the elephants, because the "Endangered

Ark Foundation (Carson & Barnes Circus) has not demonstrated the ability to comply with the [AWA] and Regulations . . .." Exhibit F.

Indeed, as plaintiffs also explain, Carson & Barnes has a well documented history of mistreating elephants and violating the Animal Welfare Act. Thus, in March, 1999, Mr. Tim Frisco, an elephant trainer for Carson and Barnes – and now a high level official at Carson & Barnes' "Endangered Ark Foundation" where the Hawthorn elephants are to be transferred – was videotaped viciously beating elephants with an electric prod and bull hook, and instructing other Carson & Barnes employees that it is important to "hurt" the elephants and "make 'em scream," in order to dominate and control them. See Exhibit A (the footage has been copied onto a DVD for the convenience of the Court); see also Exhibit B (a transcript of the recorded portion of the footage); Declaration of Mary Beth Sweetland, Plf. Exh. 1 (regarding the circumstances under which the video recording was made).

In addition, as set out in the Complaint, Carson & Barnes has been the subject of numerous Animal Welfare Act investigations over the years, including many that led to citations for violations of the statute. See Verified Complaint ¶ 25 ; see also id. (plaintiff Debra Leahy witnessed Joe Frisco Jr., Tim Frisco's brother, forcefully hook the Carson & Barnes elephants during a performance); id. (in 2004, a five-year-old elephant died while in the care of Carson & Barnes). In any event, as demonstrated above, until the agency's recent decision to "approve" the transfer of the Hawthorn elephants to Carson & Barnes, the agency had consistently taken the position that this facility was simply not suitable as a home for these animals.

On the other hand, the USDA has found that other entities are suitable for this purpose – i.e. that they are in full compliance with the Animal Welfare Act and applicable regulations – and

hence appropriate homes for these elephants. Verified Complaint ¶ 26; see also Exhibit E (the USDA state its determination that the Elephant Sanctuary and the Performing Animal Welfare Society both meet the requirements for placement of the animals). Moreover, one such facility, the Elephant Sanctuary in Hohenwald, Tennessee – a world renowned sanctuary for captive elephants – has already agreed to provide homes for these three elephants and all but one of the other eight elephants that Hawthorn must relocate. See Verified Complaint ¶ 34; Declaration of Gay Bradshaw, ¶ 10 (Plf. Exh. 2) . As Mr. Cuneo himself has acknowledged, "[e]lephants are highly social animals with well-developed relationships," and, since many of the Hawthorn elephants "have been together for well over a decade, . . . it is important to keep these elephants together as a herd to the maximum extent possible." See Exhibit G, ¶ 12 (emphasis added); see also Verified Complaint ¶ 16 ("[e]lephants form strong social bonds with their family unit; female elephants remain for life with their families, and elephants suffer great trauma if they are removed from their families").

Moreover, all three of the Hawthorn elephants have recently been exposed to elephants who tested positive for tuberculosis – a highly contagious disease for both humans and elephants. See Verified Complaint ¶13. Accordingly, pursuant to the USDA's interpretation of its own regulations, these elephants must not travel or have direct contact with the public or non-exposed elephants until the elephant has received at least 60 doses of anti-TB drugs within 90 days. Id. ¶ 12. Therefore, because all of the Hawthorn elephants have been exposed to tuberculosis, it is important and necessary that they be maintained in a separate facility, apart from other animals, until it can be assured that they are not contagious. Verified Complaint ¶ 27.

However, one of the many reasons that The Elephant Sanctuary is a suitable location for placement of the animals is that, by September, 2005, it will have completed the construction of a special barn that can house the tuberculosis-exposed elephants without having to commingle them with other elephants who have not been exposed to tuberculosis. Id. ¶ 28. Nevertheless, and despite the USDA's many prior determinations that the Carson & Barnes facility is not suitable for placement of the animals, the USDA has now made a final decision to approve the transfer of these animals to Carson & Barnes. Furthermore, that transfer is apparently imminent – i.e., plaintiffs believe that the transfer may take place this week.

## ARGUMENT

### PLAINTIFFS HAVE RAISED A SERIOUS LEGAL ISSUE AND ALL OF THE EQUITIES WEIGH IN FAVOR OF ENTERING A TEMPORARY INJUNCTION

Plaintiffs are entitled to a temporary order when they are able to demonstrate that: (1) there is a "substantial question" on the merits that is "fair ground for litigation," (2) she will suffer irreparable injury absent the relief sought, (3) other interested parties will not suffer substantial harm if the injunction is issued, and (4) granting injunctive relief is in the public interest. Wash. Metro. Area Transit Comm'n v. Holiday Tours, 559 F.2d 841, 842-44 (D.C. Cir. 1977); Population Institute v. McPherson, 797 F.2d 1062, 1078 (D.C. Cir. 1986). The consideration of these factors "interrelate on a sliding scale and must be balanced against each other." The Fund for Animals v. Norton, 281 F. Supp. 2d 209, 219 (D.D.C. 2003) (internal citations omitted). Thus, no one factor is determinative, and a modified showing of one factor is acceptable when "the other three factors strongly favor interim relief." Id. (internal citations

omitted); see also Cuomo v. United States Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) (relief may be afforded with "either a high probability of success and some injury, or vice versa") (emphasis added). Here, plaintiffs satisfy the requisite showing, and their Motion for a Temporary Restraining Order should therefore be granted.

I.   **PLAINTIFFS HAVE RAISED A SERIOUS LEGAL ISSUE**.

Plaintiffs satisfy the first prong of the temporary injunction test if they raise "serious legal questions going to the merits, so serious, substantial, and difficult as to make them a fair ground of litigation and thus for more deliberative investigation." Population Institute v. McPherson, 797 F.2d 1062, 1078 (D.C. Cir. 1986) (quoting Holiday Tours, 559 F.2d at 844). Thus, "[a]n order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." Al-joudi v. Bush, __ F. Supp. 2d __ (D.D.C. 2005), 2005 WL 774847, *5 (D.D.C. April 4, 2005) (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953). This is precisely the situation presented here – i.e., plaintiffs have raised a serious issue on the merits, and all of the equities weigh in favor of the issuance of a temporary injunction.

When addressing plaintiffs' likelihood of success on the merits, "the court must measure defendants' actions against the arbitrary and capricious standard found in the Administrative Procedure Act." Fund for Animals v. Clark, 27 F. Supp. 2d 8, 11 (D.D.C. 1998). Under this standard, a Court will overturn an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2); Motor Vehicle Manufacturers Ass'n v. State Farm Automobile Ins. Co., 463 U.S. 29, 43 (1983). Applying these

standards, it is evident that plaintiffs have at least raised a sufficiently serious issue to warrant maintenance of the status quo.

Here, in carrying out its duties under the Animal Welfare Act, the USDA undertook a determination of which facilities have "demonstrated the ability to provide proper care" for the Hawthorn elephants "in accordance with the Act and Regulations," and hence, on that basis, could be "approved" by the agency as a suitable home for these animals who are being relinquished by their current owner because they have not been properly cared for under the Act. See Consent Decision and Order ¶ 3 (March 13, 2004) (Plf. Exh. 4) (emphasis added). Nevertheless, after reiterating several times that the Carson & Barnes Circus/Endangered Ark Foundation does not meet these criteria – i.e., that it is "unable to demonstrate the ability to provide care for the elephants in accordance with the Act and Regulations," see Exhibits D, E, & F to Complaint, the USDA nevertheless has now suddenly decided to approve this facility as a suitable location for these elephants.

However, such a complete reversal of course, without any explanation, and in the face of voluminous evidence that the agency was consistently correct in its previous findings that Carson & Barnes is "unable to demonstrate the ability to provide proper care for the elephants" in accordance with the Animal Welfare Act and the applicable regulations, see id., is the height of arbitrary and capricious decision-making. See, e.g., State Farm, 463 U.S. at 43 (agency decision is normally arbitrary and capricious when the decision "runs counter to the evidence before the agency") (emphasis added); see also id. at 57 (recognizing that "[a]n agency's view of what is in the public interest may change," but holding that "an agency changing its course must supply a reasoned analysis"). Accordingly, plaintiffs have made an adequate showing on the merits to

warrant the imposition of a temporary restraining order.

## II. THE EQUITIES OVERWHELMINGLY FAVOR THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER.

In light of the USDA's decision approving Carson & Barnes' Endangered Ark as a recipient of the three Hawthorn elephants and the fact that the transport of these animals is slated to occur this week (i.e., the week of June 6th, 2005), plaintiffs easily meet their burden to establish that they are likely to suffer "irreparable harm" unless the Court issues a temporary restraining order to preserve the status quo while the Court decides the merits of the case. Indeed, because "the question of irreparable injury does not focus on the significance of the injury, but rather, whether the injury, irrespective of its gravity, is irreparable – that is, whether there is any adequate remedy at law," clearly plaintiffs are entitled to the requested injunction. See The Fund for Animals, 281 F. Supp. 2d at 221, quoting Sierra Club v. Martin, 933 F. Supp. 1559, 1570 (N.D. Ga. 1996) (emphasis added).

Thus, it is clear that Plaintiff Leahy will suffer "irreparable" injuries to her aesthetic enjoyment of these particular animals if they are transferred to Carson & Barnes, and that the elephants themselves will also be irreparably harmed by their permanent removal from their surrogate family, their transport to the Carson & Barnes facility and management under the notorious Tim Frisco and at the hands of a facility the USDA itself has said is "unable to demonstrate the ability to provide care for the elephants in accordance with the Act." See Letter from USDA to Hawthorn Corp. (May 21, 2004) (Exhibit E to Complaint).

It is well-established in this Circuit that a plaintiff suffers a cognizable injury to her aesthetic interests when animals she enjoys observing and otherwise interacting with are injured as a result of allegedly unlawful action. See, e.g., ALDF v. Glickman, 154 F.3d 426, 433 (D.C. Cir. 1998) (en banc) ("This court's precedent . . . specifically recognizes that people have a cognizable interest in viewing animals free from inhumane treatment"); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 565 (1992)("[i]t is clear that the person who observes or works with a particular animal threatened by a federal decision is facing perceptible harm"). Accordingly, courts have maintained the status quo in circumstances such as these where the plaintiff's aesthetic interests will be irreparably harmed. See The Fund for Animals v. Norton, 281 F. Supp. 2d 209, 220-22 (D.D.C. 2003) (finding irreparable harm and discussing with approval long line of cases in which courts have found irreparable harm based on plaintiffs "seeing, or contemplating" animals being mistreated); Fund for Animals v. Clark, 27 F. Supp. 2d 8, 14 (D.D.C. 1998) (finding "the aesthetic injury the individual plaintiffs would suffer" is irreparable where the plaintiffs alleged aesthetic injury "not compensable in money damages" from "seeing or even contemplating" the mis-treatment of bison); Fund for Animals v. Espy, 814 F. Supp. 142, 151 (D.D.C. 1993) (finding plaintiffs' aesthetic injury "is not compensable in money damages because, while the injury threatened to these plaintiffs' aesthetic interests would be palpable and concrete, they are not ownership interests in property susceptible to monetary valuation").

Indeed, as the Supreme Court recognized in Amoco Production Co. v. Village of Gamble, "[e]nvironmental injury, by its nature, can seldom be adequately remedied by

-10-

money damages and is often permanent or at least of long duration, i.e. irreparable" and, thus, "the balance of harms will usually favor the issuance of an injunction" to protect against such harm. 480 U.S. 531, 545 (1987); see also Nat'l Audubon Soc'y v. Butler, 160 F. Supp. 2d 1180, 1191 (W.D.Wash. 2001) ("[i]rreparable harm would result" without an injunction where "[t]here is no legal remedy that would prevent the harm").

As explained in the Verified Complaint, ¶¶ 3-5, plaintiff Debra Leahy has visited these particular elephants and has formed a strong, personal attachment to them. Therefore, her aesthetic interests in being able to visit and enjoy these animals will be irreparably harmed by the transfer of Joy, Ronnie, and Gypsy to the Endangered Ark where, either she will never be able to see them again, or, if she is able to visit them, their spirits and general well-being will be further impaired. Complaint ¶ 4 (USDA's decision "injures Ms. Leahy's aesthetic and emotional interests in these particular animals because . . . she will suffer aesthetic harm by viewing animals whose demeanor and spirit have been further impaired because they have been removed from their surrogate family and are living in an environment that is abusive and unhealthy for them"); see also ACDF v. Glickman, supra (recognizing aesthetic interests in viewing animals, and in viewing them "free from inhumane treatment"); ASPCA v. Ringling Bros. and Barnum & Bailey Circus, 317 F.3d 334 (D.C. Cir. 2003) (individual who worked for circus and had close relationship with Asian elephants suffers aesthetic injury because of the inhumane treatment of the animals).

The three elephants who will be transferred to Carson & Barnes will also suffer irreparable harm, because they will be removed from their current families. Thus, as

explained both in the Complaint, ¶ 16, and in the Declaration of Gay Bradshaw, Plf. Exh. 2, at ¶ 5 and Pat Derby, Plf. Exh. 3 at ¶ elephants form strong social bonds and are traumatized when they are separated from their families. Indeed, Mr. Cuneo himself has admitted this extremely salient fact. See Exhibit G, ¶ 12 ("[e]lephants are highly social animals with well-developed relationships," and, hence it is "it is important to keep these elephants together as a herd to the maximum extent possible"). See also Derby Decl. ¶ 12 ("separating these elephants from each other would be extremely detrimental to the elephants").[2]

The USDA's decision to approve the transfer of Joy, Gypsy, and Ronnie to Carson & Barnes will also irreparably harm these animals because Carson & Barnes has a long history of mistreating elephants and violating the minimal standards of the Animal Welfare Act. Complaint ¶¶ 22-25; see also Declaration of Gay Bradshaw ¶ 9 (Plf. Exh. 2) ("[b]ased on what I know about Carson & Barnes and/or the Endangered Ark Foundation it is my scientific opinion that the transfer of three elephants to these locations would be against the best interests of these animals and threaten their well-being").

Indeed, the video footage of Carson & Barnes' trainer Tim Frisco demonstrates that he uses force and intimidation to dominate the elephants, and that he believes it is important to make the elephants "scream" in order to exercise control over them. See

---

[2]The trauma caused to the animals in transport will also cause them harm, which is exacerbated by the fact that Carson & Barnes has a history of noncompliant transport trailers, and accidents involving trailers carrying elephants. See Verified Complaint ¶ 25; Derby Decl. ¶¶ 14-17.

-12-

Exhibits A and B. This footage paints a clear picture of the kind of treatment that awaits Joy, Gypsy, and Ronnie at Carson & Barnes' Endangered Ark Foundation where Mr. Frisco now holds a high level position. See Verified Complaint ¶ 32.

Furthermore, the Endangered Ark Foundation is Carson & Barnes' breeding facility – i.e., where it will use these elephants to make more elephants, not for reintroduction into the wild, but to stock the Carson and Barnes' Circus. See Verified Complaint ¶ 31. Therefore, these animals will undoubtedly be subjected to intrusive captive breeding procedures that will also cause them irreparable harm. See, e.g., Declaration of Pat Derby ¶ 20 ("[t]he harm to the three Hawthorn elephants from breeding could be even more grave as these elephants are all over 20 years old" and elephants "that have not given birth by this age are generally more susceptible to complications with their pregnancies or births").

In short, because plaintiffs have demonstrated that they and the animals they seek to protect will suffer irreparable injuries if the USDA's decision to approve the transfer of three elephants to Carson & Barnes' Endangered Ark is not temporarily enjoined, and because these injuries can not be adequately remedied with money damages, plaintiffs have more than amply demonstrated that they will suffer "irreparable harm" without the issuance of a temporary restraining order.

### III.  DEFENDANTS WILL NOT SUFFER ANY INJURY IF THE COURT ISSUES A TEMPORARY INJUNCTION.

In contrast to the significant, irreparable harm to plaintiffs' interests that will result if the USDA's decision is not temporarily enjoined, defendants will not suffer any

injury if this court temporarily enjoins the USDA's decision until the Court is able to further consider the merits of plaintiffs' claims. Indeed, a limited injunction will only require the USDA to, at a minimum, withdraw its approval of Carson & Barnes' Endangered Ark Foundation as a recipient of the Hawthorn elephants, and, at most, require the agency to continue to negotiate with Mr. Cuneo for the placement of the animals at a suitable facility, as the agency has done since March of 2004. Therefore, the requested injunction will merely "require the defendants to maintain a course of conduct that they have pursued" for over a year. See Nat'l Senior Citizens Law Ctr. v. Legal Serv. Corp., 581 F. Supp. 1362, 1373 (D.D.C. 1984).

Indeed, the USDA cannot point to any rational basis for its decision to permit these three elephants to be transferred to Carson & Barnes, let alone any reason why these three elephants have to be transferred to Carson & Barnes this week, or even in the immediate future. Accordingly, defendants cannot "demonstrate that [their harm] cannot be remedied in the event the government prevails on the merits of the case" because, if the USDA ultimately prevails, the agency can still approve the transfer of the elephants at a later time. See NAACP legal Defense and Education Fund v. Horner, 636 F. Supp. 762, 768 (D.D.C. 1986) (declining to withhold injunctive relief where defendant's assertion of harm "remain largely speculative, and defendants have failed to demonstrate that they cannot be remedied in the event the government prevails on the merits of the case") (emphasis supplied), appeal vacated as moot, 795 F.2d 215 (D.C. Cir. 1986).

Nor can any of the other interested parties – either the Hawthorn Corporation or Carson & Barnes – demonstrate that they will suffer any substantial injury by a delay in

the decision about where the elephants may be placed. Hawthorn is not receiving any money for the elephants, see Verified Complaint ¶ 20, and Carson & Barnes has no immediate interest in obtaining these particular animals that can not wait for a more thorough resolution of this case on the merits. Thus, any harm to defendants or any other party is far outweighed by the significant irreparable harm that plaintiffs certainly will suffer if defendants' actions are not enjoined.

## IV.   ISSUING A TEMPORARY RESTRAINING ORDER IS IN THE PUBLIC INTEREST.

Issuance of the requested injunction is also clearly in the public interest. As the Court of Appeals for this Circuit has observed, "the Animal Welfare Act . . . is explicitly concerned with the quality of animal life." ACDF v. Glickman, 154 F.3d at 438. See also id. ("The primary purpose of [the AWA] is to ensure the humane care and treatment of various animals used in research or for exhibition . . ..") (citations omitted) (emphasis added). Thus, the public has a strong interest in ensuring that the USDA carries out its duties under that statute in a way that advances, rather than defeats, the objectives of that statute. See also Clark, 27 F. Supp. 2d at 15 (public interest would be served by requiring federal agency to comply with the law); Patriot v. U.S. Dep't of Housing and Urban Dev't, 963 F. Supp. 1, 6 (D.D.C. 1997) ("the public interest is best served by having federal agencies comply with the requirements of federal law"). The public also has a strong interest in ensuring that these elephants, who have sacrificed their lives to entertain people, and for years have been mistreated, denied veterinary care, and exposed to dangerous diseases, at long last have a chance to live the remainder of

their lives in a true sanctuary – one that will treat them with the dignity, care, and respect that they so rightly deserve.

## CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that the Court issue a temporary restraining order maintaining the status quo, pending further procedures before this Court.

Respectfully submitted,

_____
Tanya M. Sanerib
(D.C. Bar No. 473506)
Katherine A. Meyer
(D.C. Bar No. 244301)

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., N.W., Suite 700
Washington, D.C. 20009
(202) 588-5206
Attorneys for Plaintiffs

June 8, 2005