## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEBRA LYNN LEAHY and PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS,** ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **Civil Action No. 05-1135 (plf)** |
| ) | **Hon. Paul L. Friedman** |
| **UNITED STATES DEPARTMENT OF AGRICULTURE, and W. RON DEHAVEN, in his official capacity as Administrator, Animal Plant and Health Inspection Service,** ) | |
| **Defendants,** ) | |
| **and** ) | |
| **JOHN F. CUNEO, JR. and THE HAWTHORN CORPORATION** ) | |
| **Defendants-Intervenors** ) | |

## FEDERAL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

Pursuant to Local Rule 65.1(c) and this Court's June 10, 2005 Order, Defendants U.S.

Department of Agriculture ("USDA") and W. Ron DeHaven (collectively, "Federal Defendants")

respectfully submit their Opposition to Plaintiffs' Motion for a Temporary Restraining

Order/Preliminary Injunction.

**BACKGROUND**

**A.    Statutory Background**

At issue in the instant action is the USDA's authority to act under the Animal Welfare Act

("AWA").  A simplified discussion of the statutory framework relevant to this litigation is helpful

in understanding plaintiffs' complaint.

The AWA requires that most animals in the United States intended for exhibition

purposes, such as in a circus or a zoo, are treated humanely.  <u>See</u> 7 U.S.C. § 2131.  The USDA,

charged with promulgating mandatory standards of care for these animals, see 7 U.S.C. § 2143,

has set forth the requisite regulations and standards for animal care.  <u>See</u> 9 C.F.R. § 1.1 <u>et seq</u>.

The USDA requires that persons exhibiting animals obtain a license called an "exhibitor license."

<u>See</u> 7 U.S.C. § 2132.  The AWA charges the USDA with authority to inspect and investigate

exhibitor facilities, see 7 U.S.C. § 2146, and to suspend and revoke exhibitor licenses for willful

violations of the Act or assess civil penalties for any violations of the AWA and regulations

issued thereunder.  <u>See</u> 7 U.S.C. § 2146(a), 2149.

**B.    Factual Background**

John F. Cuneo, Jr. is the President of the Hawthorn Corporation.  The Hawthorn

Corporation holds an exhibitor license issued by the USDA.  In April 2003, the USDA instituted

an enforcement action against, *inter alia*, John F. Cuneo, Jr. and the Hawthorn Corporation

("Defendants-Intervenors") for willful violations of the AWA and its regulations and standards of

care.  Defendants-Intervenors were charged, *inter alia*, with failing, on several occasions and in

several instances, to provide proper veterinary care and to observe mandatory safety procedures

with the elephants in their custody.  <u>See</u> Plaintiffs' Exhibit F, Consent Decision, Findings of Fact, ¶ 3-21, Conclusions, ¶ 1-14.

On March 12, 2004, Chief Administrative Law Judge Marc R. Hillson issued a consent decision and order, in which the USDA and Defendants-Intervenors were parties, that assessed a civil penalty of $200,000 against Defendants-Intervenors and required that Defendants-Intervenors "place all of their elephants, by donation, with persons who have demonstrated the ability to provide proper care for said animals in accordance with the [AWA] and Regulations, and whom the [USDA] has previously approved as donees."  Consent Decision, Order, ¶ 1, 3. The Consent Decision further stated that the failure to comply with the terms of the Order would result in the revocation of Defendants-Intervenors exhibitor's license.  Consent Decision, Order, ¶ 4.

The four elephants at issue in the instant action were determined to have been exposed to human tuberculosis.  <u>See</u> Exhibit A, Goldentyer Decl., ¶ 4.  Thus, the USDA Animal and Plant Health Inspection Service ("APHIS") determined that to demonstrate the ability to provide proper care to the elephants, potential donees would have to show that, at a minimum, it had: (1) quarantine facilities available to separate the Hawthorn elephants (which have been exposed to human tuberculosis) from any other unexposed elephants; (2) adequately trained handlers in its employ for special-needs elephants, capable of performing trunk washes, (3) the ability to administer anti-tuberculosis drugs; and (4) the financial ability to care for these special-needs elephants.  Goldentyer Decl., ¶ 4, 9; Exhibit B, Sample Letter to Potential Donees.  Additionally, to reduce the risk of tubercular contagion to the national elephant herd and to the public, and to ensure health and well-being of the Hawthorn elephants, APHIS determined that it would only

3

approve donees that could house the elephants in static (permanently-located, non-traveling) facilities that would not permit the public to be in contact with the animals.  Id.

From March 2004 to February 2005, APHIS contacted over 100 facilities and conducted an exhaustive search to locate viable, willing donees for the Hawthorn elephants.  Goldentyer Decl., ¶ 7.  While many facilities expressed an initial interest (and three of the Hawthorn elephants were successfully placed), the contacted facilities, including the Elephant Sanctuary in Tennessee, were subsequently unable or unwilling to accept the elephants at issue in the instant case.  Id.  The current donee, Carson & Barnes Endangered Ark Foundation ("EAF") was ineligible to be a donee during this search period (between March 2004 and February 2005) because during a portion of that time, EAF was the subject of two (2) APHIS investigations (between March 2004 and August 2004).  Goldentyer Decl., ¶ 3, 5.

In February 2005, Defendants-Intervenors asked APHIS to reconsider its position that EAF was unsuitable to be a donee.  Goldentyer Decl., ¶ 8.  APHIS agreed to re-evaluate EAF, and subsequently ascertained that the investigations against EAF had concluded and that the cases were closed.  Id; see Exhibit C, APHIS Inspections Reports for Carson & Barnes.  An evaluation of EAF ultimately revealed that its facilities, animals and records were kept in full compliance with the AWA and its regulations.  Goldentyer Decl., ¶ 11-14. Moreover, it was discovered that EAF was willing and able to immediately satisfy all the parameters necessary for approval as a donee, unlike any other facility.  Id.  Accordingly, given the changed circumstances regarding EAF's suitability to be a donee and APHIS's desire to remove the elephants from

Defendants-Intervenors' custody and care as quickly as possible to facilities better able to care for animals in their condition, approval was granted to allow EAF to receive the Hawthorn elephants.[1]  Goldentyer Decl., ¶ 15.

## ARGUMENT

## I.    PLAINTIFFS HAVE NOT ESTABLISHED STANDING TO BRING SUIT OR SEEK A PRELIMINARY INJUNCTION

### A.    Plaintiff Leahy

In order for a party to bring suit (or seek a preliminary injunction) in federal court, he must establish standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Humane Society of the U.S. v. Babbitt, 46 F.3d 93, 96 (D.C. Cir. 1995) ("A party invoking federal jurisdiction must satisfy the 'irreducible constitutional minimum' of standing").  The party invoking federal jurisdiction bears the burden of establishing the elements of standing.  FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990); Lujan, 504 U.S. at 561.  Thus, Plaintiff Leahy bears the burden of establishing standing to prevail in her request for a preliminary injunction.  Moreover, because "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation," Lujan, 504 U.S. at 561, Leahy cannot rely on mere allegations but must come forth with evidence to support her standing in order to obtain temporary or preliminary injunctive relief.  See Doe v. Rumsfeld, 297 F. Supp. 2d 119, 130

---

[1]  Federal Defendants note that Defendants-Intervenors sought a Temporary Restraining Order in the Northern District of Illinois to stay the Consent Decision deadline.  Those proceedings have no material relevance in this instant action.

(D.D.C. 2003) ("[m]ere allegations will not support standing at the preliminary injunction stage")(citation omitted).

It is well-established that a showing of standing requires that "a party seeking review must be himself among the injured." Sierra Club v. Morton, 405 U.S. 727, 734 (1972). Thus, to establish injury-in-fact, an element of standing, Ms. Leahy must show that she would be "'directly' affected apart from [her] 'special interest' in th[e] subject" of animal welfare. See Lujan, 504 U.S. at 563. Plaintiff Leahy has failed to make such a showing.

In Plaintiffs' Memorandum in Support of the Temporary Restraining Order/Preliminary Injunction, Plaintiff Leahy correctly notes that this Circuit has held that a plaintiff may establish standing when her "aesthetic interests" in observing and interacting with an animal are injured as a result of allegedly unlawful action. See Plaintiffs' Memorandum at p. 10. Ms. Leahy thus claims that she has established standing in the instant proceeding because she has developed "a strong, personal attachment" to the elephants at issue. Id. at p. 11. However, Plaintiff Leahy's does not meet her burden of establishing the injury-in-fact element of standing simply by invoking the buzzwords derived from this Circuit's decisions in Animal Legal Defense Fund, Inc. v. Glickman, 154 F.3d 426 (D.D.C. 1998) ("Glickman") and American Society for the Prevention of Cruelty to Animals v. Ringling Bros and Barnum & Bailey Circus, 317 F.3d 334 (D.C. Cir. 2003) ("Ringling"), and her reliance on these cases is misplaced.

In each of the aforementioned cases, this Circuit has held that standing is created where there is some showing of a personal connection or attachment to the specific animals at issue. In Glickman, the plaintiff regularly visited a particular zoo and saw specific chimpanzees suffer under conditions he believed to be inhumane. 154 F.3d at 429-32. Given the plaintiff's regular

6

contact and desire and plan to visit the chimpanzees at the zoo in the future, the D.C. Circuit Court held that the plaintiff had an aesthetic interest in the treatment of the chimpanzees, warranting a finding that the plaintiff had standing.  Id.  In Ringling, the plaintiff worked for the defendant circus for almost two (2) years, directly tending to the elephants at issue in the case. 317 F.3d at 433.  The Ringling Court found that "as a result of his work with the elephants [plaintiff] formed a 'strong, personal attachment to these animals.'"  Id.  Here however, Plaintiff Leahy has not provided any evidence of regular, personal contact to support a finding of an emotional or personal attachment with the Hawthorn elephants at issue in this case.[2] Consequently, unlike the plaintiffs in Glickman or Ringling, Plaintiff Leahy has failed to satisfy her burden in establishing an injury-in-fact and thus has not demonstrated standing.

**B.    Plaintiff PETA**

PETA's standing claim is similarly unavailing.  As an initial matter, Federal Defendants note that Plaintiffs failed to address the issue of PETA's organizational standing in its motion for a temporary restraining order/preliminary injunction and memorandum in support thereof. However, in their complaint, Plaintiffs allege that PETA's standing is based upon its assertion that it would be forced to spend resources on "monitoring the treatment" of the Hawthorn elephants and reporting the findings to its members and to the public.  See Plaintiffs' Complaint at ¶ 6, 7.  Apparently seeking to cloak itself in the language provided in Haven's Realty Corp. v. Coleman, 455 U.S. 363 (1982), found to be sufficient for satisfying organizational standing,

---

[2]  In fact, Defendants-Intervenors allege that Ms. Leahy was unable to visit any of the Hawthorn elephants as their facility is privately owned and none of the elephants in question have been publicly exhibited.  See Defendants-Intervenors Opposition, p. 17-19.

PETA, like Ms. Leahy, apparently attempts to adopt the phrases used by the Court in a favorable case, in order to garner a similar finding.

In <u>Havens</u>, the Supreme Court held that an organization dedicated to promoting equal access to housing had standing to challenge defendants' practice of steering prospective tenants away, because defendants' practice "perceptibly impaired [plaintiff's] ability to provide counseling and referral services for low- and moderate-income home seekers. . . " <u>Id</u>. at 379. The Supreme Court held that the organization's impaired ability would constitute "concrete and demonstrable injury to the organization's activities - - with  . . . consequent drain on resources." <u>Id</u>.

Plaintiffs proffer a purportedly similar argument.  However, the instant case is easily distinguishable from <u>Havens</u>.  Here, the only "service" impaired is pure issue advocacy - the very type of activity rejected by <u>Havens</u>.  <u>Id</u>. at 379.  Further, it is well-settled in this Circuit that the "self-serving observation that [an organization] has expended resources [or will do so] to educate its members and others . . . does not present an injury in fact" sufficient to create standing. <u>National Taxpayers Union, Inc. v. US</u>, 68 F.3d 1428, 1433 (D.C. Cir. 1995); <u>see also</u> <u>Center for Law and Education v. Dep't of Education</u>, 396 F.3d 1152, 1162-63 (D.C. Cir. 2005) ("Frustration of an organization's objectives is the type of abstract concern that does not impart standing.").

In <u>National Taxpayers Union</u>, the D.C. Circuit Court noted that "[a] consumer organization could not establish standing 'on the basis of its abstract interest in seeing that consumers' receive dairy products at the lowest possible price" and that "[a]n organization interested in issues relating to access to medical care 'could not establish . . . standing simply on that basis." 68 F.3d at 1433.  (internal citations omitted)  Similarly, PETA, an animal rights

organization cannot establish standing on the basis that it is interested in animal rights issues and would publicize findings related to animal rights to its members and the public.

## II.    PLAINTIFFS' CHALLENGES TO THE AGENCY'S ENFORCEMENT DECISIONS ARE NONJUSTICIABLE

In addition to their lack of standing, Plaintiffs cannot legitimately attack the enforcement decision made by the USDA to approve the Defendants-Intervenors choice of donee.  The APA expressly precludes judicial review of any "agency action [that] is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Interpreting this statutory prohibition, the Supreme Court in Heckler v. Chaney explained that "review of an administrative agency's decision is not to be had if the statute in question is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."   470 U.S. 821, 830 (1985).  "In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely."  Id.

The Chaney Court broadly established that lower courts should presume that any agency's decision whether or not to take enforcement action is immunized from judicial review under § 701(a)(2).  See 470 U.S. at 832; see also Baltimore Gas and Electric Co. v. FERC, 252 F.3d 456, 459 (D.C. Cir. 2001).  The Chaney Court provided three reasons underlying this presumption. "First, an agency's decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise, including the allocation of agency resources and the likelihood of success."  See Baltimore Gas, 252 F.3d at 459 (quoting Chaney) (internal quotation marks omitted).  "Second, an agency's refusal to act generally does not involve the exercise of coercive power over an individual's liberty or property rights, and thus does not

infringe upon areas that courts often are called upon to protect." Id. (emphasis omitted). "Third, and perhaps most importantly, an agency's decision not to enforce resembles a prosecutor's constitutional prerogative not to indict—a decision which has long been regarded as the special province of the Executive Branch—and so is entitled to similar deference." Id.

Although the Chaney Court explained that this presumption could be rebutted where "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers," 470 U.S. at 832, each court to have considered the Chaney presumption with respect to the AWA has concluded that these statutes do not provide guidance sufficient to overcome this presumption. Indeed, as the D.C. Circuit has already squarely held, the AWA invests the USDA with absolute discretion in its enforcement decisions. See Glickman, 154 F.3d 426, 431 n.3 (D.C. Cir. 1998) (en banc) ("As the district court found, the USDA's decisions about whether to undertake enforcement actions [under the AWA] are generally unsuitable for judicial review."); see also Animal Legal Defense Fund v. Glickman, 943 F. Supp. 44, 62-64 (D.D.C. 1996) (district court opinion); Moor-Jankowski v. Board of Trustees of New York University, No. 96-CV-5997, 1998 WL 274459, at *3-4 (S.D.N.Y. May 26, 1998) (following Animal Legal Defense Fund). This conclusion is inescapable after analyzing the language of the AWA, which delegates discretion to the Secretary of Agriculture to "make such investigations or inspections as he deems necessary[.]" 7 U.S.C. § 2146(a); see also 7 U.S.C. § 2149(c) (penalty "may" be assessed). "The language in the AWA provides 'no meaningful standard against which to judge the agency's exercise of discretion,' and thus, the Secretary's decision whether to take enforcement action is unsuitable for judicial review." Animal Legal Defense Fund, 943 F. Supp. at 62-63 (quoting Chaney). Here, the USDA/APHIS has unreviewable prosecutorial discretion to decide whether

to take enforcement action under the AWA.  Such prosecutorial discretion includes the decision

whether and on what terms to settle an enforcement action, as Federal Defendants did here by

entering into a consent agreement with Defendants-Intervenors.  Equally so, just as the decision

to enter into a settlement of an enforcement action involves the exercise of prosecutorial

discretion, whether and how to enforce the terms of the settlement (by approving EAF,

continuing further to search for another suitable donee, or exercising the option under the consent

decision to revoke Defendants-Intervenors license) also involved an exercise of USDA's

prosecutorial discretion, and therefore is equally unreviewable (at least at the behest of non-

parties to the consent decision such as plaintiffs here).  Consequently, the Federal Defendants'

approval decision lies beyond the scope of judicial review provided for by the APA.

## III.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

Even assuming *arguendo* that this Court were to review the USDA/APHIS decision to

approve EAF as a suitable donee for the Hawthorn elephants at issue in the instant action,

Plaintiffs claim must still fail.  The Federal Defendants' approval decision was reasonable and

beyond reproach, and certainly cannot be characterized as arbitrary and capricious.

Plaintiffs argue that the USDA/APHIS decision to approve EAF was "arbitrary and

capricious" because the USDA/APHIS had previously found that EAF was "unable to

demonstrate the ability to provide proper care for the elephants in accordance with the [AWA}

and [its] regulations."  See Plaintiffs' Memorandum at p. 3.  Plaintiffs' contentions, however, do

not withstand scrutiny.  While Plaintiffs are correct in their assertion that APHIS previously

deemed EAF unsuitable as a donee for the Hawthorn elephants, the basis for the agency's initial

11

determination was that EAF was subject, at the time, to two (2) investigations into the standards of care utilized while handling and transporting its elephants. <u>See</u> Goldentyer Decl., ¶ 3, 5. The first investigation resulted in a finding that EAF had provided its elephant with veterinary care in a manner consistent with and/or exceeding the requirements of the AWA. <u>Id</u>. at ¶ 5. The second investigation resulting in a finding that while an EAF driver was transporting two (2) elephants, the driver was involved in an accident causing minor lacerations to the elephants. <u>Id</u>. It was determined that the driver had exceeded the maximum driving hours under the relevant transportation regulations and had fallen asleep on the road. <u>Id</u>. APHIS assessed and EAF paid a $550 penalty in connection with the incident. <u>Id</u>.

      Pursuant to a request by Defendants-Intervenors to reconsider EAF after an exhaustive search of potential donees proved futile, the USDA/APHIS discovered that EAF was no longer under investigation and had satisfactorily addressed any outstanding issues. <u>See</u> Goldentyer Decl., ¶ 11. Additionally, EAF was qualified to accept the Hawthorn special needs elephants at issue in this case as EAF met <u>all</u> of the parameters for donor suitability and could take the elephants immediately. <u>See</u> Goldentyer Decl., ¶ 12-14. Accordingly, given the changed circumstances regarding EAF's suitability to be a donee and APHIS's desire to remove the elephants from Defendants-Intervenors' custody and care as quickly as possible (as APHIS has continue to document AWA violations by Defendants-Intervenors <u>after</u> the Consent Decision was issued, see Goldentyer Decl., ¶ 6), approval was granted to allow EAF to receive the Hawthorn elephants. <u>See</u> Goldentyer Decl., ¶ 15. Under the circumstances, the decision to

approve EAF can hardly be found to be "arbitrary and capricious," and Plaintiffs' claims, even if justiciable,  must fail.

IV.     **THE PRELIMINARY INJUNCTION IS NOT IN THE PUBLIC INTEREST**

As stated earlier, Defendants-Intervenors were assessed a civil penalty of $200,000 and required to donate all of their elephants because they failed to provide proper care for the animals.  Consent Decision, Findings of Fact, ¶ 3-21; Conclusions, ¶ 1-14; Order, ¶ 1,3.  Even after the Consent Decision was issued, APHIS determined that Defendant-Intervenors have continued to violate the AWA "in connection with their handling, husbandry and care of elephants . . ."  <u>See</u> Goldentyer Decl., ¶ 6, Exhibit E, APHIS Inspections Reports of the Hawthorn Facility.  Accordingly, it is in the public interest to remove the elephants from the Hawthorn facility as expeditiously as possible.

Carson & Barnes/EAF has demonstrated the willingness and ability to accept the Hawthorn elephants at the present time.  <u>See</u> Goldentyer Decl., ¶ 11-14.  Additionally, despite Plaintiffs' assertion to the contrary that EAF is a "notorious abuser of elephants" and has been subject to "numerous Animal Welfare Act investigations over the years," see Plaintiffs' Memorandum at p. 1, 4, inspection reports from the Carson & Barnes/EAF facilities for the previous three (3) years show that 32 inspections were conducted, in which there were only three (3) minor instances of noncompliance during that time.  <u>See</u> Exhibit D, APHIS Inspections Reports for the Carson & Barnes Facility.  Federal Defendants note that the Elephant Sanctuary, the facility Plainitffs suggest this Court compel the USDA to approve, has stated that it will be unable to accept <u>any</u> Hawthorn elephants before September 2005.  <u>See</u> Defendants-Intervenors

Opposition, Exhibit 14.  Thus, if Plaintiffs were to prevail, the elephants would be required to

stay in Hawthorn's custody for months, until the Elephant Sanctuary was ready to receive the

elephants.  Such an action is not in the public interest.  Moreover, inasmuch as plaintiffs have not

even demonstrated injury fact, as discussed above, they will suffer no harm, irreparable or

otherwise, if the relief they seek is denied.  Accordingly, the balance of interests weighs

decisively against an award of injunctive relief in this instance.

## CONCLUSION

WHEREFORE, for the foregoing reasons, defendants respectfully submit that the Court

deny Plaintiffs' request for a preliminary injunction, and that their claims be dismissed for lack of

standing or alternatively on the merits..


Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JAMES GILLIGAN
Assistant Branch Director


_____
ISAAC R. CAMPBELL
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 616-8476
Facsimile: (202) 616-8460
*Attorneys for Defendants*

Date: June 15, 2005

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing via facsimile and overnight mail on June 15, 2005, to the following counsel of record:

Tanya M. Sanerib

Katherine A. Meyer

MEYER & GLITZENSTEIN

1601 Connecticut Avenue, N.W.

Suite 700

Washington, D.C. 20009-1056

tel: (202) 588-5206

fax: (202) 588-5049

*Attorneys for Plaintiffs*

Derek L. Schaffer

Vincent J. Colatriano

Michael Weitzner

Cooper & Kirk, PLLC

1500 K Street, N.W.

Suite 200

Washington, D.C. 20005

tel: (202) 220-9600

*Attorneys for Defendants-Intervenors*

_____

Isaac R. Campbell

**EXHIBITS TO MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF FEDERAL DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**

| Tab | Exhibit |
|---|---|
| A | Declaration of Elizabeth Goldentyer, D.V.M. (dated June 15, 2005) |
| B | Sample Donee Letter |
| C | APHIS Inspections Reports for Carson & Barnes during the period March 2004 to April 2005 |
| D | APHIS Inspections Reports for Carson & Barnes during the period  June 2002 to April 2005 |
| E | APHIS Inspections Reports for Hawthorn during the period March 2004 to April 2005 |